## PEPERA v WEIDELY CO

Municipal Court of Cleveland

M. L. Jacobs, Cleveland, for plaintiff.
Cerrezin & Wilson, Cleveland, for defendant.

## OPINION

By ARTL, J.

Action in tort for damages sustained by the plaintiff as the result of the alleged violation of a duty owed to plaintiff by defendant corporation. The following is a statement of the facts as found by the court, the case having been tried without the intervention of a jury.

On or about June 8, 1936, the plaintiff, a young man of the age of 25 years, purchased from the defendant, a corporation, a certain used 1929 Pontiac automobile, for a price, a part of which was financed through a finance company. Because said purchase price was to be financed, the bill of sale, after filing for record, was to stay in the possession of the mortgagee and would be delivered to the plaintiff when the outstanding mortgage debt was paid.

The defendant, as a part of its service to the plaintiff, through an agency specializing in such service, filed the bills of sale for record and obtained for the plaintiff a clerk's certificate of ownership and license plates, the charges for which were included in the purchase price of the car.

It developed that the defendant had two used 1929 Pontiacs in its lot. Due to an error of the defendant's employees, the plaintiff received the car that he actually purchased, but the bills of sale and the clerk's certificate of ownership executed by the defendant to the plaintiff described, by numbers, etc., the wrong automobile, being the other Pontiac then owned by the defendant. The license plates procured for and delivered to the plaintiff were issued pursuant to the bill of sale executed.

We, therefore, find at this point the plaintiff in possession of the automobile he purchased, but driving it pursuant to bills of sale and license plates issued for a different car.

Subsequently, sometime around the 1st of August, 1936, the defendant company, in taking inventory, discovered that the remaining Pontiac automobile had been stolen from its lot and reported the theft to the Cleveland police. At or about the same time they discovered that in transferring the title to plaintiff of the auto he purchased, they had erred in describing it in the bill of sale and clerk's certificate. The defendant then wrote to the plaintiff, asking him to bring his automobile in for the purpose of checking its identification numbers with their records, with which request the plaintiff complied and was then

furnished with a new bill of sale and clerk's certificate of ownership.

In reporting the theft, the defendant furnished the police with the wrong information as to the description of the car having described plaintiff's car and did not advise the police as to the error it had made when delivering to the plaintiff the evidence of title to the car he had purchased, nor did they notify the police of the wrong description of the stolen car.

Subsequently, on February 11, 1937, the police in quest of the thief and the stolen car went to the home of the plaintiff, who was not at home, being at his work. Upon his return plaintiff was informed by his family that the police were looking for him and that they would be back later that evening. Plaintiff waited and when the detectives arrived was told by them that the car he had was stolen and took him to the police station. About one hour later the detectives took the plaintiff to main office of the defendant found no one there and therefore proceeded to the used car lot of the defendant, some 18 or 20 blocks farther east on Broadway.

At the lot the detectives, in the company of the plaintiff, found a salesman in charge, inquired for Mr. Walter A. Weidely, the general manager of the defendant. Upon being informed that Mr. Weidely had left for his home, it was suggested that an attempt be made to telephone him at his home, which was on River road, Gates Mills. There was a telephone at the lot, an extension line operated through a switch board at the main office of the defendant. However, no outgoing calls could be made thereon at the time, since the switch board at the main office was closed daily about 6:30 P. M. One of the detectives therefore accompanied the salesman to a 'phone elsewhere and the other detective remained with the plaintiff.

Upon the return of the officer and the salesman plaintiff was told that Mr. Weidely could not be reached, and after exchanging a wink with the salesman plaintiff was ordered to accompany the officers to the Central Police Station. Upon his arrival at the station plaintiff was lodged in jail. Plaintiff was kept in jail under arrest until the following morning and was released about 10 A. M., no charge having been placed against him.

Plaintiff described the jail as very filthy, overrun with vermin; claims he had to sleep on a bench without any mattress; that while in jail he was locked up in the bull pen with a crowd of ill-smelling drunks; that he was placed in the "line-up" and put through a grilling barrage of questions and that during the time he was in custody he was given a cup of coffee and a roll.

Plaintiff had never before been arrested or convicted of any offense, was employed regularly, had lost a day's wages and had to expend money to have his car towed to his home.

The defendant general manager, Walter A. Weidely, knew nothing of the plaintiff's arrest until the morning of his release February 12, 1937. The stolen auto was recovered a month or two after plaintiff's arrest. Plaintiff did not compare the numbers on his car with those on the certificate of ownership.

After reciting substantially the facts hereinabove set forth as the findings of the court, the plaintiff's petition contains the following allegations:

"Plaintiff further says that his arrest was caused by the inadvertence and carelessness of the defendant corporation, by and through its duly authorized agent, in not reporting to the police the fact that this plaintiff had previously been given a clerk's certificate bearing the engine number of the automobile which this defendant corporation had reported stolen, so that the information was wholly within the knowledge of the defendant corporation and it could therefore protect this plaintiff from any inconvenience or embarrassment."

Plaintiff's claim, therefore is in substance:

(1) That defendant sold to plaintiff an automobile for which it was bound to furnish the plaintiff with evidence of title required by statute;

(2) That defendant owed plaintiff the duty to furnish him with the papers accurately describing his automobile;

(3) That through defendant's carelessness plaintiff was furnished with an inaccurate bill of sale and certificate;

(4) That when defendant discovered that in reporting the theft it had given the police department the description numbers of plaintiff's car, defendant was bound to inform the police of such error;

(5) That defendant knew, or was bound to know that with the erroneous information in the possession of the police that plaintiff would be arrested by the police;

(6) That defendant did not fulfill the duty it owed to plaintiff and that as a direct result thereof plaintiff was arrested and confined in jail.

Counsel for the defendant adopted the view that the action was one of false imprisonment and defended upon that theory. It maintained throughout that it had done nothing directly or indirectly to cause the plaintiff's imprisonment; that it had acted in good faith in its dealing with the plaintiff; that defendant did nothing to cause the plaintiff any inconvenience or embarrassment; that plaintiff was not damaged by any act of the defendant.

At the close of plaintiff's opening statement, and at the close of plaintiff's evidence, the defendant moved the court for a finding in favor of defendant. These motions were overruled. Again at the close of all the evidence, defendant moved for a finding in its favor. The court reserved a ruling on this motion and the matter was then submitted to the court after argument.

From an analysis of the facts it is at once evident that we are dealing with a very novel situation. Extensive study of the cases dealing with the subject matter fails to disclose a single instance analogous to that here presented. And in view of the positions taken by counsel and their respective claims it might be well to analyze the elements of the tort or torts involved.

Let us test the pleadings and the facts we have before us in the light of the defendant's theory, namely, that plaintiff's petition is founded upon the tort known as False Imprisonment. In Volume 25, Corpus Juris, Page 443, we find False Imprisonment defined as follows:

"False Imprisonment consists in the unlawful restraint against his will of an individual's personal liberty or freedom of locomotion. The gist of false imprisonment is unlawful detention."

In the discussion of the subject in the same authority, under the title "Nature and Elements," on Page 451, sub-head "Intent," we find the following language:

"Although there need be no intent to arrest, there must be an actual or legal intent to restrain plaintiff. Where the restraint is accidental * * * it has been held not to constitute false imprisonment."

There is no claim, and no evidence of any, that the defendant corporation or any of its agents did anything directly or indirectly to intentionally restrain plaintiff. The most that can be said on that subject is found in the following language, part of plaintiff's petition:

"Plaintiff further says that his arrest was caused by the inadvertence and carelessness of the defendant corporation, by and through its duly authorized agent, in not reporting * * *."

Quoting once more from Volume 25, Corpus Juris, we find on Page 497, Section 68, the following:

"In order that a defendant be held liable for false imprisonment, he must have personally participated therein either by direct act or by indirect procurement."

Since the defendant has not personally or directly participated in the arrest and imprisonment of the plaintiff, there remains but one further question to dispose of, namely, do the facts herein warrant the conclusion that the defendant brought about the arrest by "indirect procurement?"

The material facts are that an automobile was stolen from the defendant's lot. The theft was reported to the police, and in so doing the defendant gave the police erroneous information as to the description of the automobile. There is nothing in the record to indicate that defendant ordered or directed the police to arrest anyone. The defendant reported the stolen automobile for the purpose of tracing its property which it had a right to do. True, defendant knew, without telling the police to do so, that the police would arrest the offender when they apprehended him.

This court has made an extensive study of the reported cases involving the question of false imprisonment and false arrest. Nowhere have we been able to find a single decision comparable to the instant case nor one that held that the conduct of the defendant would constitute a procurement. In every case examined the procurement was some direct act through some human agency. Text writers generally regard and classify false imprisonment as an intentional tort. That element is lacking in this state of facts.

We, therefore, conclude that defendant is on sound ground in his contention that the action is not a false arrest and imprisonment case.

We next turn to plaintiff's theory of the

case, namely, that defendant owed to plaintiff a certain duty which, through its negligence it violated, causing the plaintiff damage.

The defendant had a statutory as well as a contractual duty to furnish plaintiff with an accurate bill of sale as evidence of the ownership of the automobile which he purchased from the defendant. The defendant gave plaintiff a bill of sale, but described therein the wrong car. Later it discovered its error and corrected it by giving plaintiff a new bill of sale and procured for him a clerk's certificate of ownership with the correct description numbers. This action by defendant completed the duty it owed to plaintiff. Up to this point in their relations, while defendant did err in carrying out its obligation to plaintiff, no damage was suffered by plaintiff and he complains of none, and except for what happened subsequently the error of defendant would have been forgotten.

But the mischief that occurred is attributed by plaintiff to subsequent actions of the defendant. Someone stole an automobile from defendant's used car lot.. Defendant reported the car missing. It had described to the police the wrong car. The description erroneously given the police was the description of the car sold to and purchased by the plaintiff. Defendant later discovered its error. Plaintiff contends that when the defendant discovered that in its report to the police it had described the car it had sold to the plaintiff, the defendant knew, or in the exercise of ordinary care should have known, that in tracing the stolen car the erroneous information,—the identifying numbers of the car, —would be used by the police and that as a direct, reasonable and natural consequence thereof plaintiff would be arrested and imprisoned, unless the police were notified of defendant's error.

Although the defendant discovered its error it did not notify the police. At least, there is no evidence that it had. Six months or so later the plaintiff was arrested as above set forth.

No one will seriously doubt that defendant owed the plaintiff the duty to protect him from any injury that would naturally or reasonably flow from its failure to correctly complete its original contract with the plaintiff and to safeguard the plaintiff from any reasonable consequences of such an error, which the defendant did, or should have, recognized as involving a risk of causing an invasion of plaintiff's interest.

In determining the standard of reasonable conduct in the premises certain factors are important and should be considered. They are very ably stated in Restatement of the Law of Torts, Volume 2, Negligence, Page 762-3, Section 289, from which we quote:

"The actor should recognize that his conduct involves a risk of causing an invasion of another's interest, if a person, (a) possessing such perception of the surrounding circumstances as a reasonable man would have, or such superior perception as the actor himself has, and

(b) possessing such knowledge of other pertinent matters as a reasonable man would have or such superior knowledge as the actor himself has, and

(c) correlating such perception and knowledge with reasonable intelligence and judgment would infer that the act creates an appreciable chance of causing such invasion."

Analyzing the evidence presented on the trial in the light of the factors above set forth, we cannot escape the conclusion that the defendant knew or should have known that if the police find a man in possession of property reported stolen he will be arrested and held by the police, at least long enough for such person to explain the possession of such property, if he can. This sort of thing occurs so frequently and is so generally known that it must be regarded as a matter of common knowledge.

Under the circumstances when defendant learned of its error in its report to the police it knew, in fact, except the plaintiff, it was the only one who knew of its prior confusion in its dealing with the plaintiff and its previous error, that the failure to rectify its police report and apprise the police of the true situation in its relation to the plaintiff that such failure to act would create an appreciable chance of causing an invasion of plaintiff's interest.

It has been suggested that since the defendant had completed its statutory and contractual obligation to the plaintiff that the injury to plaintiff was the result of the stolen car incident, in other words, that this action is one involving the "Culpable Intervention as Superseding Cause" doctrine.

We are of the opinion that this doctrine

has no application to the instant case, and a study of the definition of "Superseding Cause" and "Intervening Force" will readily disclose that fact.

Quoting from Restatement of Law of Torts, Volume 2, Negligence, Sections 440 and 441 we find superseding cause defined as follows:

"A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

and intervening force defined as follows:

"An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed."

It will be noted from the definition of intervening force, in order to have application to a particular situation that the intervening force must come into play, operate or intervene after the actor's (defendant's) negligent act or omission has been committed. While it is true in the instant case that the injury to plaintiff followed the stealing of defendant's property and that defendant erred in its original handling of the bill of sale, it is the negligent omission to act by defendant after the stealing of the car upon which plaintiff predicates his claim for damages,—in other words, defendant's omission to advise the police after the car was stolen of the error it had made in describing the stolen car. This was a second specific duty the defendant owed to the plaintiff, a duty which arose after the stealing of the automobile, and the violation of which is the basis for the claim in the case at bar. We must, therefore, reject this contention.

Some question was likewise raised as to the remoteness in point of time of the arrest in relation to the time of the aggrieved act or failure to act. Approximately six months had elapsed between the two events. On that score it should be observed that when the duty arose it became a continuing one and existed on the date of the arrest just as it did on the date defendant made its incorrect police report. If the defendant's omission was actionable on the date of reporting to the police, the lapse of six months time in failing to perform its duty by defendant did not make it less actionable.

The court, therefore, reaches the conclusion that the defendant, by reason of its own error, had the duty █ and the means by the exercise of due care to prevent plaintiff's arrest and imprisonment; that it failed to do so and that such failure to act is actionable negligence; that the arrest and imprisonment of the plaintiff was a natural, reasonable and direct result of the defendant's failure to exercise ordinary care in the circumstances, for which defendant must respond in damages to the plaintiff.

Accordingly, the finding will be for the plaintiff. Damages of plaintiff assessed at Two Hundred Dollars ($200.00).